**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREGORY DUNKLEY | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) Civil Action No. 05-1544 (RWR) |
| EXECUTIVE OFFICE FOR UNITED | ) |
| STATES ATTORNEYS/FOIA/PA UNIT | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The U.S. Department of Justice, a proper named representative, instead of the named

Defendant, Executive Office of United States Attorneys, through counsel, respectfully moves the

Court, pursuant to Fed. R. Civ. P. 56, for summary judgment in favor of Defendant since no genuine

issue of material fact precludes it and since Defendant is entitled to judgment as a matter of law.

In support hereof, the Court is respectfully referred to the attached statement of material facts not

in genuine dispute and memorandum of points and authorities in support of the motion.[1]  A proposed

order is also attached.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney

---

[1]  Plaintiff should note that the Court will accept as true any factual assertions contained in affidavits, declarations or other attachments in support of Defendants' motion unless Plaintiff submits his own affidavit, declaration or other documentary evidence contradicting the assertions in Defendants' submissions. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992).  Indeed, Fed. R. Civ. P. 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GREGORY DUNKLEY** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) **Civil Action No. 05-1544 (RWR)** |
| **EXECUTIVE OFFICE FOR UNITED** | ) |
| **STATES ATTORNEYS/FOIA/PA UNIT** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, through counsel, the United States Attorney for the District of Columbia respectfully submits this memorandum of points and authorities in support of its motion for summary judgment. Defendant submits that no genuine issue of material fact precludes summary judgment and that Defendant is entitled to judgment as a matter of law inasmuch as Defendant's withholding of information against Plaintiff's FOIA requests was legally justified.

**I.    INTRODUCTION AND BACKGROUND**

**A.    The Complaint**

By a three-page complaint, comprising nine numbered paragraphs, Defendant essentially claims that he has not received all documents to which he is entitled in response to a request under the Freedom of Information Act (FOIA) filed sometime in 2000 or 2001. Compl. at ¶ 5. Plaintiff sets forth a general procedural history of the administrative process. Id. at ¶¶ 6-8. Plaintiff alleges that some pages were released in whole or in part, including one additional page after an appeal to the Office of information and Privacy, but contends that forty-one (41) or forty-two (42) pages were withheld in full. Id. As background, Plaintiff admits that he is a prisoner serving a sentence resulting from his plea of guilty to a three-count indictment charging him with conspiracy, possession with

intent to distribute and importation of ecstasy under Title 21 of the United States Code. Compl. at ¶3 and at 2, n.1 In his FOIA request, Plaintiff sought all correspondence between the Assistant U.S. Attorney on his criminal case and his criminal defense attorneys, as well as all investigative files and records. Id. at ¶ 5.

### B.    The Administrative Process

As records of the Executive Office for United States Attorneys (EOUSA) reflect, officials exchanged communication with Plaintiff concerning FOIA requests as further described below.  By letter dated February 1, 2001, Plaintiff submitted a FOIA request seeking records pertaining to himself that were located in the Northern District of Georgia. See Declaration of David Lucynski (hereinafter "DL Dec"; attached) at ¶ 4 & Exh. A.  By letter dated April 3, 2001, EOUSA acknowledged Plaintiff's request and provided him with FOIA reference number 01-545. Id. at ¶ 5 & Exh. B.  The letter also informed Plaintiff that a request for "all records" is considered a "project request," which takes considerably more time to process than the statutory period. Id.

On April 16, 2002, EOUSA received a second letter request from Plaintiff dated April 5, 2002.  DL Dec at ¶ 6 & Exh. C.  On July 31, 2002, EOUSA notified the requester that records had been located in the U.S. Attorney's Office (USAO) for the Northern District of Georgia. Id. at ¶ 7 & Exh. D. EOUSA enclosed with this letter sixty-six (66) pages of processed material that was released in full ("RIF"), and forty-two (42) pages that was released in part ("RIP"). Id.  EOUSA also notified Plaintiff that seventy-two (72) pages of material was withheld in full ("WIF") and that FOIA exemptions 5 U.S.C. §552 (b)(5) and (b)(7)(C), as well as Privacy Act (PA) Exemption 5 U.S.C. §552a (j)(2), were applied to justify EOUSA's withholding. Id.  Plaintiff appealed this determination by letter dated August 7, 2002, which appeal was forwarded to the U.S. Department of Justice Office

of Information and Privacy ("OIP") for review.  Plaintiff's letter specifically refers to the "withholding in full of 72 pages."  DL Dec at ¶ 8 & Exh. E.

In a September 23, 2002 letter, OIP notified Plaintiff that his appeal had been received, had been assigned appeal No. 02-3216 and would be reviewed in the order that it was received.  DL Dec at ¶ 9 & Exh. F.  By letter dated February 21, 2003, OIP informed Plaintiff that it had affirmed EOUSA's decision to withhold the "**42** [sic] pages," thus denying his appeal. Id. at ¶ 10 & Exh. G. The discrepancy in page count of the records withheld in full from "72 pages" to "42 pages" described in the OIP letters apparently has been transposed to the Complaint. Id. at ¶ 11 & Exh. H. Notwithstanding, a full 72 pages were processed by EOUSA.  Id.

## II.    THE SEARCH FOR RESPONSIVE DOCUMENTS

After receiving Plaintiff's FOIA requests, EOUSA searched for responsive documents. EOUSA contacted the official assigned to process FOIA requests at the U.S. Attorney's Office for the Northern District of Georgia ("GAN"). DL Dec at ¶ 12.  Each United States Attorney's Office maintains the case files for criminal matters prosecuted by that Office.  Id.  The FOIA Contact began a systematic search for records on Gregory Dunkley to determine the location of any and all files relating to him in order to comply with the request. Id.  The FOIA Contact searched the case files for records in that case and searched computer systems of the USAO/GAN, after which she reported that she had found records responsive to Plaintiff's requests. Id.

Specifically, to accomplish the search, the FOIA Contact searched in the computer tracking system for records for the USAO/GAN that were listed under the name "Dunkley." DL Dec at ¶ 13. The FOIA Contact used a computer case tracking system in the USAO/GAN to determine all possible locations of responsive files. Id.  The systems utilized in searching for records pertaining to Plaintiff were the Public Access to Court Electronic Records ("PACER"), and the Legal

Information Office Network System ("LIONS"). <u>Id</u>. at ¶ 14. The LIONS system is the computer system used by United States Attorneys' Offices, and the Department of Justice as a whole, to track cases and to retrieve files pertaining to cases and investigations. <u>Id</u>. By use of the LIONS system, officials can retrieve the information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number. <u>Id</u>. In this case, the FOIA Contact used the LIONS system to locate records based upon the name "Dunkley." <u>Id</u>.

### III.    ARGUMENT

#### A.    Standards for Evaluating Summary Judgment Motions

Where no genuine dispute exists as to any material fact, summary judgment is required. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. <u>Id</u>. at 247. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." <u>Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

The Courts have held that FOIA cases should ordinarily be disposed of by motions for summary judgment. Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA lawsuit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements under Rule 56 in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. Federal Trade Commission, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). When the

pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

### B.    Defendant Has Submitted Proper *Vaughn* Indices

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs."  Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits (singly or collectively) are often referred to as a "Vaughn Index," after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564 (1974).  There is no set formula for a Vaughn Index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  *See also* Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).

The Vaughn Index serves a threefold purpose: (1) it  identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  *See* Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the

6

material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

David Lucynski, Attorney Advisor for EOUSA, is familiar with the procedures followed by EOUSA in responding to FOIA requests and is aware of the procedures followed with respect to the Plaintiff's request for access to records. See DL Dec at ¶¶ 1-3. Mr. Lucynski's declaration explains the justification for the assertion of the exemptions claimed and is based upon his review of the official files and records of EOUSA, on his own personal knowledge, and on the basis of information acquired by him in the performance of his official duties. Id. at ¶ 2. The declaration provides a summary of EOUSA's processing of the FOIA requests and a justification for the exemptions cited to withhold information from disclosure. As set forth above, the declaration submitted in support of this motion meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and, together with this memorandum, provides the Court with the requisite factual and legal basis to grant Defendant's motion for summary judgment.

### C.    Defendant Has Performed Adequate Searches

The USAO/GAN, as requested by EOUSA, has performed an adequate search in response to Plaintiff's direct FOIA requests. In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material. Cleary at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes

responsive records are likely to be located. Oglesby, 920 F.2d at 68. Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Given the nature of the files requested, that is, criminal files relating to a case in the Northern District of Georgia, such files are only maintained in that District. See DL Dec at ¶ 12. Accordingly, it was appropriate and reasonable to search all records and records systems of the USAO/GAN for files responsive to Plaintiff's requests in Plaintiff's name. See id. at ¶¶ 12-14.

### D.   Defendant Properly Withheld Certain Records Under the FOIA

### 1.   EOUSA Properly Applied Exemption 5

Section 552(b)(5) of Title 5 ("exemption 5") exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Accordingly, Exemption 5 ensures that the public cannot obtain, through the FOIA, documents "which a private party could not discover in litigation with the agency." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975) (hereinafter "Sears"), citing EPA v. Mink, 410 U.S. 73, 85-86 (1973). The exemption incorporates the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege that protects candid internal discussion of legal or policy matters[.]" Maricopa Audubon Society v. United States Forest Serv., 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).[2]

---

[2]   The protections of Exemption 5 as to the attorney work-product privilege, the deliberative process privilege and the attorney-client privilege are not limited to civil litigation. Rather, courts have either explicitly or implicitly recognized that the work-product doctrine is applicable to

"The deliberative process privilege, also known as the 'executive' or 'governmental' privilege serves many purposes."[3] Eugene Burger Management Corp. v. United States Dep't of Housing & Urban Dev., 192 F.R.D. 1, 4 (D.C.C. 1999). The main purpose of this privilege "which is well established in the law, is...to 'prevent injury to the quality of agency decisions.'" Cofield, et al. v. City of LaGrange, Georgia, 913 F. Supp. 608, 615 (D.D.C. 1996) (quoting Sears, 421 U.S. 132, 151 (1975)). The deliberative process privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions and reasoning used in the administrative and decision making process of the Government. See United States v. Morgan, 313 U.S. 40, 422 (1941); Petroleum Info Corp. v. Department of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. Department of Justice, 926 F.2d 1192, 1194-1195 (D.C. Cir. 1991); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).

The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy. Sears, 421 U.S. at 149-51; Petroleum

criminal prosecutions when the courts have upheld the nondisclosure of documents prepared in the context of a criminal investigation/prosecution pursuant to the (b)(5) Exemption. See Antonelli v. Sullivan, 732 F.2d 560, 561 (7th Cir. 1983); Ferri v. United States Dep't of Justice, 573 F. Supp. 852, n.33 (W.D.Pa. 1983); Harvey v. United States Dep't of Justice, 747 F.Supp. 29, 37 (D.D.C. 1990); Durham v. United States Dep't of Justice, 829 F. Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F. Supp. 21, 28 (D.D.C. 1996). Further, Fed. R. Crim. P. 16(a)(2) excludes from disclosure the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case. "[U]nder Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case." United States v. Armstrong, 517 U.S. 456 (1996).

[3] The deliberative process privilege serves: "'to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's actions.'" Eugene Burger Management Corp., 192 F.R.D. at 4 (quoting Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Info Corp., 976 F.2d at 1434; Access Reports, 926 F.2d at 1194-95; Farley, 11 F.3d at 1389.  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice."  Federal Open Market Comm. v. Merrill, 443 U.S. 340, 360 (1979).  The privilege protects the consultative functions of the Government by preserving the confidentiality of opinions, recommendations, and deliberations which constitute part of the process by which government decisions are made and Government policies are formulated.  Jordan v. United States Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc).

Since "Exemption 5 'was intended to protect not simply the deliberative material, but also the deliberative process of agencies,'" National Wildlife Federation v. United States Forest Serv., 861 F.2d 1114, 1118 (9th Cir. 1988) (quoting Montrose Chemical Corp. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974)) courts have found that even factual material may be encompassed within the privilege.  For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  First, the document must qualify as being in a "predecisional" phase of agency action,[4] i.e., "antecedent to the adoption of agency policy."  Jordan v. Department of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).  In determining whether a document is predecisional, the Supreme Court has held that an agency need not identify a specific decision in connection with which a document is prepared. Sears, 421 U.S. at 151 n.18.  Rather, it is sufficient for the agency

---

[4] "A 'predecisional document' is one 'prepared in order to assist an agency decision maker in arriving at his decision' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'  A predecisional document is part of the 'deliberative process' if 'disclosure of [the] materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'"  Formaldehyde Inst. v. Department of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989).  "In other words, the document is considered to be part of the 'deliberative process' as long as it is 'actually . . . related to the process by which policies are formulated.'  Jordan v. United States Dep't of Justice, 591 F.2d 753] at 774 [D.C.Cir. 1978]."  National Wildlife Fed'n, supra, 861 F.2d at 1118 (emphasis added).

to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980). The Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision. Sears, 421 U.S. at 151 n.18.; see also Dudman Communications Corp. v. Department of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes – not to protect specific materials.").

Secondly, the document must be deliberative in nature, that is, it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975). Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150. Thus, the exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process. Coastal States, 617 F.2d at 866.

Documents are part of the deliberative process when they are "actually related to the process by which policies are formulated," and "antecedent to the adoption of an agency policy." Jordan v. United States Dep't of Justice, 591 F.2d 753, 775 (D.C. Cir. 1978). Moreover, documents reflecting an "agency's group thinking in the process of working out its policy and determining what its law shall be," are exempt under the FOIA Exemption 5. Id. (quoting Sears, 421 U.S. at 153).[5]

---

[5] The courts have held that staff evaluations of factual circumstances and the conclusions drawn from such submissions form "the essence of the deliberative process." National Wildlife Federation v. United States Forest Serv., 861 F.2d 1114, 1121 (9th Cir. 1988). Additionally, reports or other documents that summarize issues and advise superiors are protectable under the deliberative process privilege. See Access Reports v. Department of Justice, 926 F.2d at 1196-97; Williams v.

EOUSA asserts exemption 5 to protect pursuant to the attorney work product and deliberative process privileges the following documents listed in the Index: Document 1, Document 2, and Document 4. DL Dec at ¶¶ 19-20. The records or portions of records to which the attorney work product privilege was applied reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions relating to Plaintiff's criminal case. The records contain deliberations concerning asset forfeiture decisions. The records were prepared by or at the behest or direction of an attorney, and made in anticipation of or during litigation. The substance of the records withheld in part or in their entirety should be exempt from disclosure pursuant to this privilege. Id. at ¶ 21.

---

Department of Justice, 556 F. Supp. 63, 654 (D.D.C. 1982). Courts consistently have held staff analysis and advice -- whether supportive or critical of the position finally adopted by the agency -- to be protected under the deliberative process privilege. See, e.g., Long Beach Container Terminal, Inc. v. Occupational Safety & Health Review Comm'n, 811 F.2d 477, 479 (9th Cir. 1987) ("because courts are usually prohibited from inquiring into an administrator's decision making mental process, it follows that the mental processes of staff members are totally irrelevant"); Nat'l Wildlife Fed'n v. Burford, 677 F. Supp. 1445, 1457-58 (D. Mont. 1985).

Also, deliberative documents are protected against disclosure when they reflect the personal opinions of the writer rather than the policy of a government agency. Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). Release of one employee's opinion, expressed to his fellow employees, as to what an agency practice might be does not amount to a pronouncement of agency policy that must be disclosed to the public. Release of the preliminary advice and opinions of individual government employees would often confuse, rather than clarify, the public perception of the position of a government agency. Russell v. Department of the Air Force, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982); Fisher v. Department of Justice, 772 F.Supp. 7, 10-11 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992).

Moreover, draft documents are exempt because they "reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp. v. Department of Energy, 617 F.2d at 866. Where an employee writes a draft document and the agency uses a consultative process (e.g., circulating the draft for comments or clearance) to determine what the final version should include, then the draft is exempt. Russell v. Department of the Air Force, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982); Lead Industries Ass'n v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979). Stated differently, the very process by which a draft evolves into a final document constitutes a deliberative process.

In addition, these same records, in certain instances, contain deliberative process of the United States Attorney's Office and other federal and state agencies in their consideration of possible criminal charges against the Plaintiff. DL Dec at ¶ 22. Disclosing this information would reveal pre-decisional communications among government officials, such as discussion of various litigation issues, alternatives and strategies. Id. Disclosure would jeopardize the candid, confidential and comprehensive exchange of communications essential for effective and efficient decision-making, particularly in the exercise of prosecutorial discretion. Id.

2.    **EOUSA Properly Applied Exemption 7(C)**

Under Title 5, United States Code, § 552 (b)(7)(C) (hereinafter Exemption 7(C)), the FOIA does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

13

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish those individuals' privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if any, served by disclosure. Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of shedd[ing] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F.Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).

In order to overcome legitimate privacy interests, the requester must demonstrate not only the existence of a public interest, but also that the public interest is both significant and compelling.

14

Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987);  Stone v. FBI, 727

F. Supp. 662, 667-69 (D.D.C. 1990).  Furthermore, concerning the information withheld in full and

in part pursuant to exemption (7)(C) pertaining to third parties, the privacy rights of the third parties

outweigh any public interest in disclosure.  See DL Dec at ¶¶ 24-25.  Plaintiff cannot show any

public interest in the disclosure. See National Archives and Records Admin. v. Favish, 541 U.S. 157,

172-75 (2004).

      EOUSA asserts exemption 7(C) to withhold from disclosure the identities of and personal

information about third party individuals, where the release of this information could subject such

persons to an unwarranted invasion of their personal privacy.  DL Dec at ¶ 24.  All information at

issue in this case was compiled for law enforcement purposes in order to assist in the investigation

and prosecution of Gregory Dunkley.  Id. at ¶ 23.  EOUSA submits that releasing this information

could result in unwanted efforts to gain further access to such persons or to personal information

about them, or could result in harassment, harm, or exposure to unwanted and/or derogatory

publicity and inferences, all to their detriment.  Id. at ¶ 24.  EOUSA determined that documents

containing such references could not be disclosed and should be redacted and segregated in all the

documents to which this exemption was applied.  Id.

      After reviewing and evaluating these documents, EOUSA determined that no public interest

existed in the release of the privacy-protected information contained in them because dissemination

of the information would not help explain the activities and operations of the EOUSA or the United

States Attorney's office. DL Dec at ¶ 25.  No public interest that EOUSA could identify would

counterbalance the law enforcement interests and the third-party individuals' privacy interest in the

information withheld under this exemption. Id.  Moreover, no third party impacted had provided an

authorization or consent to disclose the information. Id.  EOUSA applied exemption 7(C) to all eight (8) documents listed in the Vaughn Index.  Id. at ¶ 26.

### 3.    EOUSA Law Enforcement Records Are Exempt under 552a (J)(2)

As stated by the Court in Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28 (D.D.C. 2004), "[e]xemption (j)(2) exempts from disclosure 'any system of records within the agency,' as long as the agency that maintains the system of records 'performs as its principal function any activity pertaining to the enforcement of criminal laws....' 5 U.S.C. § 552a(j)(2)." Id. at 35.  It is clear that, given the nature of the records sought and the identity of the agency requested, that the Executive Office for United States Attorneys, which oversees the functions of Offices of United States Attorneys, performs as a principal function the enforcement of criminal laws. DL Dec at ¶ 23.

## E.    SEGREGABILITY

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements".  Mead Data, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id.  All that is required is that the government show

"with 'reasonable specificity'"" why a document cannot be further segregated.  <u>Armstrong v.</u>
<u>Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is
not required to "commit significant time and resources to the separation of disjointed words, phrases,
or even sentences which taken separately or together have minimal or no information content."
<u>Mead Data</u>, 566 F.2d at 261, n.55.

      Here, as clearly expressed in Mr. Lucynski's declaration, EOUSA evaluated each document,
and each page contained in each document, for segregability. DL Dec at ¶ 27. All information
withheld was exempt from disclosure pursuant to a FOIA or Privacy Act exemption. <u>Id</u>.  Where a
document was withheld in its entirety, EOUSA determined that no meaningful portions could
reasonably be released without destroying the integrity of such document as a whole. <u>Id</u>.  Plaintiff
was provided with all information which did not reveal information protected by statute or which,
if disclosed, would violate the personal privacy of third parties. <u>Id</u>.  The documents withheld in full
by EOUSA were carefully analyzed for segregability purposes. <u>Id</u>.  No reasonably segregable, non-
exempt information was withheld from Plaintiff. <u>Id</u>.

## CONCLUSION

WHEREFORE, Defendant respectfully submits that its motion for summary judgment should be granted.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____/s/_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **GREGORY DUNKLEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 05-1544 (RWR)** |
| **EXECUTIVE OFFICE FOR UNITED** | ) | |
| **STATES ATTORNEYS/FOIA/PA UNIT** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**STATEMENT OF MATERIAL
FACTS NOT IN GENUINE DISPUTE**

Defendant, through counsel, the United States Attorney for the District of Columbia, pursuant to Local Rule 56.1, respectfully submits the following statement of material facts not in genuine dispute in support of its motion for summary judgment.

**Administrative History**

1.      Records of the Executive Office for United States Attorneys (EOUSA) reflect that officials exchanged communications with Plaintiff concerning FOIA requests as further described below. By letter dated February 1, 2001, Plaintiff submitted a FOIA request seeking records pertaining to himself that were located in the Northern District of Georgia. See Declaration of David Lucynski (hereinafter "DL Dec"; attached) at ¶ 4 & Exh. A.

2.      By letter dated April 3, 2001, EOUSA acknowledged Plaintiff's request and provided him with FOIA reference number 01-545. Id. at ¶ 5 & Exh. B.  The letter also informed Plaintiff that a request for "all records" is considered a "project request," which takes considerably more time to process than the statutory period. Id.

3.      On April 16, 2002, EOUSA received a second letter request from Plaintiff dated April 5, 2002.  DL Dec at ¶ 6 & Exh. C.

4.      On July 31, 2002, EOUSA notified the requester that records had been located in the U.S. Attorney's Office (USAO) for the Northern District of Georgia. Id. at ¶ 7 & Exh. D. EOUSA enclosed with this letter sixty-six (66) pages of processed material that was released in full ("RIF"), and forty-two (42) pages that was released in part ("RIP"). Id.  EOUSA also notified Plaintiff that seventy-two (72) pages of material was withheld in full ("WIF") and that FOIA exemptions 5 U.S.C. §552 (b)(5) and (b)(7)(C), as well as Privacy Act (PA) Exemption 5 U.S.C. §552a (j)(2), were applied to justify EOUSA's withholding. Id.

5.      Plaintiff appealed this determination by letter dated August 7, 2002, which appeal was forwarded to the U.S. Department of Justice Office of Information and Privacy ("OIP") for review. Plaintiff's letter specifically refers to the "withholding in full of 72 pages." DL Dec at ¶ 8 & Exh. E.

6.      In a September 23, 2002 letter, OIP notified Plaintiff that his appeal had been received, had been assigned appeal No. 02-3216 and would be reviewed in the order that it was received.  DL Dec at ¶ 9 & Exh. F.

7.      By letter dated February 21, 2003, OIP informed Plaintiff that it had affirmed EOUSA's decision to withhold the "**42** [sic] pages," thus denying his appeal. Id. at ¶ 10 & Exh. G.  The discrepancy in page count of the records withheld in full from "72 pages" to "42 pages" described in the OIP letters apparently has been transposed to the Complaint. Id. at ¶ 11 & Exh. H. Notwithstanding, a full 72 pages were processed by EOUSA.  Id.

**The Search for Responsive Documents**

8.      After receiving Plaintiff's FOIA requests, EOUSA searched for responsive documents. EOUSA contacted the official assigned to process FOIA requests at the U.S. Attorney's Office for the Northern District of Georgia ("GAN"). DL Dec at ¶ 12.

9.      Each United States Attorney's Office maintains the case files for criminal matters prosecuted by that Office. Id.

10.     The FOIA Contact began a systematic search for records on Gregory Dunkley to determine the location of any and all files relating to him in order to comply with the request. Id. The FOIA Contact searched the case files for records in that case and searched computer systems of the USAO/GAN, after which she reported that she had found records responsive to Plaintiff's requests. Id.

11.     Specifically, to accomplish the search, the FOIA Contact searched in the computer tracking system for records for the USAO/GAN that were listed under the name "Dunkley." DL Dec at ¶ 13. The FOIA Contact used a computer case tracking system in the USAO/GAN to determine all possible locations of responsive files. Id.

12.     The systems utilized in searching for records pertaining to Plaintiff were the Public Access to Court Electronic Records ("PACER"), and the Legal Information Office Network System ("LIONS"). Id. at ¶ 14. The LIONS system is the computer system used by United States Attorneys' Offices, and the Department of Justice as a whole, to track cases and to retrieve files pertaining to cases and investigations. Id. By use of the LIONS system, officials can retrieve the information based on a defendant's name, the USAO number (United States' Attorney's Office internal

3

administrative number), and the district court case number. Id.  In this case, the FOIA Contact used the LIONS system to locate records based upon the name "Dunkley." Id.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2006, I caused the foregoing Defendant's

Motion for Summary Judgment, Statement of Material Facts Not in Genuine Dispute and Proposed

Order to be served on Plaintiff *Pro se*, by mail, postage prepaid, addressed as follows:

**Gregory Dunkley**
**#49586-019**
**Federal Prison Camp**
**P.O. Box 699**
**Estill, S.C. 29918**

_____/s/_____
OLIVER W. MCDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 616-0739